UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>EYAL ALPER,<br><br>　　　　　　　Defendant. | Civil Action No.<br><br>COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF UNDER THE COMMODITY EXCHANGE ACT |

Plaintiff, Commodity Futures Trading Commission ("CFTC"), an independent federal agency, by and through its attorneys, alleges as follows:

## I.  SUMMARY

1. From at least late 2015 through the present (the "Relevant Period"), Eyal Alper ("Alper") defrauded members of the public by fraudulently soliciting them to trade commodity futures ("futures") and/or retail foreign currency on a leveraged or margined basis ("retail forex") through accounts managed by Alper, and then misappropriating the funds provided to him for these purposes.

2. Alper solicited at least nine customers through telephone and face-to-face conversations. Alper's solicitations to these customers contained numerous misrepresentations, including that: (1) he was an experienced and successful trader; (2) he controlled a large-dollar master account at FxPro, a United Kingdom ("UK")-based trading firm, that allowed him to open subaccounts on behalf of customers; and (3) he would open an individual subaccount for each customer and use that subaccount to trade futures and/or retail forex on their behalf.

1

3. Alper instructed customers to send their money to him directly. During the Relevant Period, Alper received more than $280,000 from customers in principal and commission payments, which was deposited into a bank account controlled by Alper.

4. Alper did not open subaccounts for his customers and did not trade futures and/or retail forex on their behalf. Rather, Alper misappropriated his customers' funds and used those funds to pay for his personal expenses.

5. To cover up his misappropriation of customer funds, Alper sent false statements to his customers, which purported to show that their accounts were making profits. Alper also charged his customers a commission of approximately thirty percent (30%) based on their purported profits, which he asked some of them to pay to him separately rather than have it taken out of their profits.

6. At various times during the Relevant Period, each of the nine customers requested to withdraw funds from his account. In some instances, Alper failed to respond at all to a customer's request. In other instances, Alper responded with various false excuses as to why he could not immediately comply with the request. Among the excuses that Alper made to customers as to why he could not comply with their withdrawal requests were that: (1) the Securities and Exchange Commission ("SEC") was auditing his books; (2) his accounts were frozen; and (3) the money was stuck overseas. Alper continued either to ignore customers' withdrawal requests or to make excuses to customers until they gave up on getting their money back. Alper has never returned any money to any of these nine customers in response to their requests for withdrawals.

7. Most, if not all, of Alper's customers were not eligible contract participants ("ECPs") under Section 1a(18)(A)(xi) of the Commodity Exchange Act (the "Act"), 7 U.S.C. § 1a(18)(A)(xi) (2012).

8. By this conduct and the conduct further described herein, Alper has engaged, is engaging, and/or is about to engage in acts and practices in violation of Sections 4b(a)(2)(A)-(C) and 4*o*(1)(A) and (B) of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6*o*(1)(A), (B) (2012), and Commission Regulation ("Regulation") 5.2(b)(1)-(3), 17 C.F.R. § 5.2(b)(1)-(3)(2019).

9. In addition to the above-described illegal conduct, throughout the Relevant Period Alper, while acting as a commodity trading advisor ("CTA"), accepted funds from customers in his own name thereby violating Regulation 4.30(a), 17 C.F.R. § 4.30(a) (2019).

10. Unless restrained and enjoined by this Court, Alper will likely continue to engage in the acts and practices alleged in this Complaint, or in similar acts and practices, as described more fully below.

11. Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), the CFTC brings this action to enjoin Alper's unlawful acts and practices, to compel his compliance with the Act and Regulations, and to enjoin him from engaging in commodity-related activity. In addition, the CFTC seeks civil monetary penalties, restitution, and remedial ancillary relief, including, but not limited to, disgorgement, pre- and post-judgment interest, rescission, and such other and further relief as the Court may deem necessary and appropriate.

## II.   JURISDICTION AND VENUE

12. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 (2012) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2012) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by

any agency expressly authorized to sue by Act of Congress). In addition, Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), provides that United States district courts possess jurisdiction to hear actions brought by the CFTC for injunctive relief or to enforce compliance with the Act whenever it shall appear to the CFTC that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder. Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (2012), provides the CFTC with jurisdiction over the retail forex solicitations and transactions at issue in this action.

13. Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e) because Alper resides in this District and transacts or transacted business in this District, and certain transactions, acts, practices, and courses of business alleged in this Complaint occurred or are occurring, or are about to occur within this District, among other places.

### III.   THE PARTIES

14. Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1-26 (2012), and the Regulations promulgated thereunder, 17 C.F.R. pts. 1-190 (2019). The CFTC maintains its principal office at Three Lafayette Centre, 1155 21st Street N.W., Washington, D.C. 20581.

15. Defendant **Eyal Alper** is an individual who resides in Tarrytown, New York. Alper has held himself out as a retail forex trader with Alper Management Inc. Alper has never been registered with the CFTC.

### IV.   FACTS

16. During the Relevant Period, Alper solicited at least nine customers to trade futures and/or retail forex through accounts managed by him. Alper's solicitations occurred

4

primarily in telephone conversations with customers; however, in some instances, Alper met face-to-face with customers.

17. During the course of his solicitations, Alper stated or implied to customers that he was an experienced and successful trader. He told at least one customer that he had been trading for five to seven years and that after losing money early in his career, he had not had a down month in many years and that he had experienced double digit growth. He stated to another customer that he had taken an account of approximately $40,000 and grown that into $400,000.

18. In fact, Alper has not had an active or even a funded futures or retail forex trading account at any domestic futures commission merchant ("FCM") or retail foreign exchange dealer ("RFED") since at least as far back as January 2014.

19. Alper also stated or implied to customers that he controlled a large-dollar trading account at FxPro, a UK-based trading firm; he told some customers that the account was over $1 million. Alper told customers that because of the size of his account, he was able to open sub-accounts on their behalf under his master account.

20. In fact, Alper never had an account or any subaccounts at FxPro, and it has been the policy at FxPro since 2010 not to accept accounts from U.S. customers.

21. Alper told customers that if they invested their money with him, he would put that money into a sub-account under his master account at FxPro and trade futures and/or retail forex on a discretionary basis on their behalf. Alper said that he would charge a commission of approximately thirty percent (30%) of any profits achieved. In addition, Alper offered at least some customers a cash bonus on top of their profits if they kept their money with Alper for at least six months.

22. On the basis of Alper's representations, at least nine customers sent money to Alper to trade on their behalf during the Relevant Period. Alper instructed customers to send their funds not to FxPro, but directly to him, via check, wire, bank transfer, or direct deposit. Customers' funds were deposited to bank accounts controlled by Alper.

23. In soliciting customers, Alper made no attempt to determine if they were eligible contract participants ("ECPs") under Section 1a(18)(A)(xi) of the Act, 7 U.S.C. § 1a(18)(A)(xi) (2012). In fact, most, if not all, of Alper's customers were not ECPs.

24. Alper never transferred any of the funds received from his customers into subaccounts at FxPro or into accounts at any domestic FCM or RFED for trading futures or retail forex. Contrary to the representations made to his customers, Alper misappropriated his customers' funds and used them to pay for his personal expenses. For example, during the Relevant Period, Alper made numerous cash withdrawals from a bank account into which customer funds had been deposited, as well as numerous transfers from that account to his personal bank account. In addition, Alper used the funds in that bank account to pay for, among other things, international travel, restaurants, and car rentals.

25. To conceal his misappropriation, Alper sent false statements to his customers which purported to show that their accounts were making profits. These statements consisted of screenshots sent to customers via text message which purported to show the customer's balance, equity, margin level, and gains/losses on various trades of futures and/or retail forex. The statements did not contain the name of FxPro on them; nor did they contain an account number. Indeed, Alper never provided his customers with their account numbers. The statements were not dated; nor did they provide the date on which the purported trades listed were made.

26.     Despite the fact that no customer funds were ever transferred to FxPro, the statements sent to customers showed that their accounts were making profits.  On the basis of these false statements, Alper calculated and claimed his commission from his customers.  Rather than take his commission from the purported profits made by his customers' accounts, Alper convinced some of his customers to send additional funds to his bank account to pay his commission.  During the Relevant Period, Alper received more than $280,000 from customers in principal and commission payments.

27.     At various times during the Relevant Period, each of the nine customers sought to withdraw funds from his account.  In some instances, Alper failed to respond at all to a customer's request.  In other instances, Alper responded with various false excuses as to why he could not immediately comply with the request.  Among the excuses that Alper made to customers as to why he could not comply with their withdrawal requests were that:  (1) the SEC was auditing his books; (2) his accounts were frozen; and (3) the money was stuck overseas.  Alper continued either to ignore customers' withdrawal requests or to make excuses to customers until they gave up on getting their money back.  Alper has never returned any money to any of these nine customers in response to their requests for withdrawals.

V.  **VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS**

<u>COUNT I</u>

**FRAUD IN CONNECTION WITH FUTURES CONTRACTS AND RETAIL FOREX CONTRACTS**

**Violations of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C)(2012), and Regulation 5.2(b)(1)-(3), 17 C.F.R. § 5.2(b)(1)-(3)(2019)**

28.     The allegations in the preceding paragraphs are re-alleged and incorporated herein by reference.

29. 7 U.S.C. § 6b(a)(2)(A)-(C) makes it unlawful for any person to: (A) cheat or defraud or attempt to cheat or defraud another person, (B) willfully to make a false report or statement to another person, or (C) willfully to deceive or attempt to deceive another person by any means whatsoever in connection with any futures contract or retail forex transaction.

30. 7 U.S.C. § 6b(a)(2)(A)-(C) applies to retail forex transactions as if they were futures contracts pursuant to Section 2(c)(2)(C)(iv) of the Act, 7 U.S.C. § 2(c)(2)(C)(iv) (2012).

31. 17 C.F.R. § 5.2(b)(1)-(3) makes it unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce, to (1) cheat or defraud or attempt to cheat or defraud another person, (2) willfully to make a false report or statement to another person, or (3) willfully to deceive or attempt to deceive another person by any means whatsoever in connection with any retail forex transaction.

32. As set forth above, during the Relevant Period, Alper violated and continues to violate 7 U.S.C. § 6b(a)(2)(A)-(C) and 17 C.F.R. § 5.2(b)(1)-(3) by, among other things: (i) misappropriating customer funds; (ii) making, causing to be made, and distributing reports or statements to customers that contained false information; and (iii) fraudulently soliciting customers, all in connection with futures contracts and/or retail forex transactions, including the purported trading of futures contracts and/or retail forex transactions conducted or to be conducted by Alper on behalf of his customers.

33. Each act of misappropriation, misrepresentation, and issuance of a false report, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6b(a)(2)(A), (B), and/or (C) and 17 C.F.R. § 5.2(b)(1), (2), and/or (3).

## COUNT II

### FRAUD BY A COMMODITY TRADING ADVISOR

Violations of Section 4*o*(1)(A) and (B) of the Act,
7 U.S.C. § 6*o*(1)(A) and (B)(2012)

34. The allegations in the preceding paragraphs are re-alleged and incorporated herein by reference.

35. 7 U.S.C. § 6*o*(1)(A) and (B), in relevant part, makes it unlawful for a CTA, by use of the mails or any other means of interstate commerce, directly or indirectly, to: (A) employ any device, scheme, or artifice to defraud any customer; or (B) engage in any transaction, practice, or course of business that operates as a fraud or deceit upon any customer.

36. 7 U.S.C. § 6*o*(1)(A) and (B) applies to CTAs engaging in retail forex transactions pursuant to Section 2(c)(2)(C)(ii) and (vii) of the Act, 7 U.S.C. § 2(c)(2)(C)(ii), (vii) (2012).

37. 7 U.S.C. § 6*o*(1)(A) and (B) applies to all CTAs, whether registered, required to be registered, or exempted from registration.

38. Section 1a(12) of the Act, 7 U.S.C. § 1a(12) (2012), defines a CTA as any person who for compensation or profit, engages in the business of advising others as to the value or advisability of trading in, among other things, futures contracts or retail forex transactions. Similarly, Regulation 5.1(e)(1), 17 C.F.R. § 5.1(e)(1) (2019), defines a CTA as "any person who exercises discretionary trading authority or obtains written authorization to exercise discretionary trading authority over any account for or on behalf of any person that is not an [ECP] in connection with retail forex transactions."

39. In the case of an individual, 7 U.S.C. § 1a(18)(A)(xi) defines an ECP to mean a person "acting for its own account . . . who has amounts invested on a discretionary basis, the aggregate of which is in excess of – (I) $10,000,000; or (II) $5,000,000 and who enters into the

agreement, contract, or transaction in order to manage the risk associated with an asset owned or liability incurred, or reasonably likely to be owned or incurred, by the individual."

40. As set forth above, during the Relevant Period, for compensation or profit, Alper acted and continues to act as a CTA by engaging in the business of advising others and by exercising discretionary trading authority over accounts for or on behalf of persons, including persons who are not ECPs, in connection with futures contracts and/or retail forex transactions.

41. As set forth above, Alper violated and continues to violate 7 U.S.C. § 6o(1)(A) and (B), in that, by use of the mails or other means of interstate commerce, he employed or is employing a device, scheme or artifice to defraud customers and/or engaged or is engaging in transactions, practices, or a course of business which operated or operate as a fraud or deceit upon customers, by, among other things: (i) misappropriating their funds; (ii) making, causing to be made, and distributing reports or statements to customers that contained false information; and (iii) fraudulently soliciting customers, all in connection with the purported trading of futures contracts and/or retail forex transactions conducted or to be conducted by Alper on behalf of his customers.

42. Each act of misappropriation, misrepresentation of material fact, and each issuance of a false report, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6o(1)(A) and/or (B).

## COUNT III

### PROHIBITED ACTIVITIES BY A CTA

### Violation of Regulation 4.30(a), 17 C.F.R. § 4.30(a) (2019)

43. The allegations in the preceding paragraphs are re-alleged and incorporated herein by reference.

44. 17 C.F.R. § 4.30(a), prohibits a CTA, whether registered, required to be registered, or exempted from registration, from soliciting, accepting, or receiving from an existing or prospective customer funds in the CTA's name to purchase, margin, or guarantee any commodity interest of the customer.

45. As set forth above, during the Relevant Period, Alper violated 17 C.F.R. § 4.30(a) by soliciting, accepting, and receiving funds from customers in his own name for the purpose of purchasing, margining, guaranteeing or securing futures contracts and/or retail forex contracts for them.

46. Each act of improperly receiving customer funds, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 17 C.F.R. § 4.30(a).

## VI. RELIEF REQUESTED

WHEREFORE, the CFTC respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and pursuant to the Court's inherent equitable powers, enter:

A. an order finding Alper liable for violating Sections 4b(a)(2)(A)-(C) and 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6o(1)(A), (B) (2012), and Regulations 4.30(a) and 5.2(b)(1)-(3), 17 C.F.R. §§ 4.30(a), 5.2(b)(1)-(3) (2019);

B. an order of permanent injunction restraining and enjoining Alper and his affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, who receive actual notice of such order by personal service or otherwise, from engaging in the conduct described above, in violation of 7 U.S.C. §§ 6b(a)(2)(A)-(C) and 6o(1)(A) and (B), and 17 C.F.R. §§ 4.30(a) and 5.2(b)(1)-(3);

C.     an order of permanent injunction restraining and enjoining Alper and his affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, from directly or indirectly:

a. trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

b. entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2019)) for accounts held in the name of Alper or for accounts in which Alper has a direct or indirect interest;

c. having any commodity interests traded on Alper's behalf;

d. controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

e. soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

f. applying for registration or claiming exemption from registration with the CFTC in any capacity, and engaging in any activity requiring registration or exemption from registration with the CFTC, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2019); and

g. acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2019)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the CFTC, except as provided for in 17 C.F.R. § 4.14(a)(9);

D. an order directing Alper, as well as any third-party transferee and/or successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from acts or practices which constitute violations of the Act and Regulations as described herein, including pre-judgment and post-judgment interest;

E. an order directing Alper, as well as any successors thereof, to make full restitution to every person who has sustained losses proximately caused by the violations described herein, including pre-judgment and post-judgment interest;

F. an order directing Alper, as well as any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between, with or among Alper and any of the customers whose funds were received by Alper as a result of the acts and practices that constituted violations of the Act and Regulations as described herein;

G. an order directing Alper to pay a civil monetary penalty assessed by the Court, in an amount not to exceed the penalty prescribed by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2012), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, tit. VII, § 701, 129 Stat. 584, 599-600, *see* Regulation 143.8, 17 C.F.R. § 143.8 (2019), for each violation of the Act and Regulations, as described herein;

H. an order requiring Alper to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2413(a)(2) (2012); and

I.      an order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.

Respectfully Submitted,

Commodity Futures Trading Commission

*[signature]*

Richard A. Glaser
Deputy Director
New York Bar No. RG8652
*Rglaser@cftc.gov*

Alan I. Edelman
Senior Trial Attorney
(*pro hac vice* admission pending)
DC Bar No. 375495
*aedelman@cftc.gov*

Daniel C. Jordan,
Chief Trial Attorney
(*pro hac vice* admission pending)
VA Bar No. 36382
*djordan@cftc.gov*

Commodity Futures Trading Commission
Division of Enforcement
1155 21st Street, NW
Washington, DC 20581
Telephone: (202) 418-5000
Facsimile: (202) 418-5523

Dated: October 24, 2019